Thank you, your honor. May it please the court. My name is Ember Tilton. I represent the Alaska pretrial detainees for the end of unwarranted courtroom shackling. If the state of Alaska were to bring those accused of crimes in a court on a hand truck with a straight jacket and a face guard like an elector, this court wouldn't have any problem in joining that conduct. So the question isn't whether or not... Really? Why wouldn't you just deal with that in the state court proceeding? Why would the federal court intervene in that matter? Because they have the authority and the jurisdiction to do so and they're being asked. Well, you have the ability within the context of the state court proceeding to tell the judge, presumably, that that's not constitutional. And if that judge disagreed, you could take an immediate appeal, right? The problem would be that it would happen again the next day to the next guy who's brought in and he would have the same... But the suit will get resolved. I mean, if you brought somebody in looking like that, especially if you brought him before a jury, and they were convicted, they would have a right to a direct appeal in Alaska. You'd have a right of certiorari to the Supreme Court. And then failing that, you'd have a right to habeas corpus in this court, where I think there's probably little doubt that we would overturn it on habeas. Absolutely. And that would remedy the conviction that was had under poor circumstances. But what it won't remedy is the fact that it happened in the first place. Your job, I think, in front of us is to distinguish this case from O'Shea versus Littleton. How do you do that? Well, the Littleton case is interesting. It wasn't decided on abstention grounds. It was a mootness case, which brings us back around to Sanchez Gomez. That case talks a good deal about when the federal government shouldn't intervene into a state court proceeding. But in the end, it talks about how there aren't any... There's no case in controversy left. There's no... Well, O'Shea, we treat Supreme Court dicta as, I guess, privileged dicta. Absolutely. And there's a lot of talk in O'Shea, in addition to whether or not there's a case of controversy with respect to whether or not these individuals are likely to be subjected to this again, in terms of not wanting to intervene, supervise, and get tied up in sort of an active participation in a supervision of procedures that were at issue in O'Shea. So let's talk about that aspect of O'Shea. What were the people who was being asked to intervene, and the Supreme Court said, you know, that's just too much intervention into the state court system. Compare that sort of intervention at issue in O'Shea to the sort of intervention here, if you please. I mean, the district judge thought that this was too similar to the sorts of intervention that were sought in O'Shea versus Littleton. In O'Shea, what we have is a situation where there's a claim of discrimination. Different things are happening. Sentences are too high. Bail is being set too high for different individuals. And based on discriminatory behavior by the participants in the court system. Yes. Not a single policy or unspoken policy as we have in this case, but just various procedures, specifically bail and sentencing. And the intervention sought by the plaintiffs in O'Shea versus Littleton really would have required almost a case-by-case determination as to whether or not there was discrimination and whether or not the particular sentence was too high. Right. And so it was not uniform practice. It was sort of bail sentence by bail sentence, sentence by sentence. That's correct. And so that would require the federal court to review challenged cases, challenged under the injunction. Somebody might have standing under Rule 70, although I'm not sure Rule 70 was read the same then, but certainly now if the case were to come back, they'd seek an enforcement of the injunction. They would say, I got a higher sentence than the next guy. And it was because of bias or some sort of discrimination. So there would be a constant review and it would be ongoing. It would be an excessive entanglement. And that's really what O'Shea is about, is when the entanglement is excessive. And so when there's a discrete issue, a single order, and joining one particular act, that doesn't create an excessive entanglement that that's a single thing like we saw in... But you're not seeking an order that, let me phrase it as a question, are you seeking an order that shackling may never be used? Oh, absolutely not. Okay, so you don't have a bright line rule. No, in fact, it would probably be used more often than not. You think of shackling would be more likely under the rule you're seeking? No, no, no. More often than not, that people are held on knowing Alaska's court system, a lot of the crimes charged are violent crimes. Right. And these people would have a hearing... Could still be shackled. And they could still be shackled. Okay. And if you thought that the findings were inadequate, do you have a remedy to go and say that you violated the district court's order? Well, it would be the same type of remedy a person would have in a bail review case, which was that issue in the County of Alaska, where they were waiting too long before setting bail. They made a discreet rule. So what is it exactly? What's the order that you want to come out of the district court? What's it going to say? Well, so I've gone back and forth on this a little bit. I would like it to say that there should always be a factual determination before shackles are used. The same thing as Sanchez Gomez said. How about the district, the state courts are forbidden from having a blanket rule that always requires shackling. Do you settle for that? No, they'll stand here and tell you in a second that they don't have a blanket rule. So what do they have? I mean, what are you objecting to? They have different policies in the different courts throughout the state. And don't they have different policies? Because the courtrooms are set up very differently. And Alaska has a lot of rural areas, which they have very, very few officers. Yes. And in those situations, I understand from the affidavit submitted by the state, it's often just one defendant being brought. He is handcuffed, but not two other defendants. Right. And they don't have holding cells or... And if we were to adopt a rule that you could never be shackled, would that impose additional costs on Alaska? I don't see how that rule could ever be required. If you have to secure the safety of the judge and the court security officers and the public are entitled to attend these things, and you have concerns about how the defendant or the accused might react in court, wouldn't you have to have additional court personnel? No. So if there's concern, then you can use... Right. But if he's not shackled, then his hands are free. Of course. And these are concerns, real concerns to district courts. If there's any reason to believe that a person creates a risk of attempted escape, these types of things, then shackles can be used. And that's been our position since the beginning. That's the position of the 9th Circuit. And the threshold would only be any concern? Well, a factual basis for it would be required. So what precisely is your objection to the current practice, then? There's no determination. It's indiscriminate. It's unwarranted. There is no reasonable suspicion to believe that these folks will present some threat or... And what's the practice that you're objecting to? Meaning, we've got different courts, the different... I think you've told us that the different courts within Alaska have different practices with respect to the shackling? So there's two claims. One is that there's no pre-deprivation hearing. That's what's required under Zinnerman v. Birch, I believe. When it's practicable, the government must have a hearing before depriving a person of their liberty. And in this case, we're alleging that having your hands shackled together is a deprivation of liberty. And in your view, that comes within Zinnerman? Yeah. So that's one of the two claims. The other claim is that when a person is shackled with one hand to one person on one side, the other hand to a person on the other side, and hauled into court in a line like this, and sat down in a row of chairs, that that violates substantive due process. That should never happen. What's your authority for that? It's oppressive. Is there case authority for that? Or you're asking us to make a new ruling on that? Oh, I've asked for an injunction on it. The question is, do you have authority for that proposition? Are you asking this court to create that authority? I'm asking for this court to create that authority. The authority to enjoin conduct that violates substantive due process is well established. It has to be arbitrary and oppressive government conduct. And your objection to the district court order is that the district judge just refused to get to the question. Right. And so on this issue, there is a very single and discreet order to Walter Monaghan, who's the director of the Alaska Department of Public Safety and the head of the Alaska State Police, who run the judicial services, who shackle folks in the courtroom, that that practice should never be used. It's inhumane. It deprives people of dignity. And it's completely unnecessary. That should be enjoined. And that will not create any entanglement with the federal system because, like in O'Shea and like in Sanchez-Gomez, we assume people will follow the law. Now, this is the problem with Sanchez-Gomez. His case became moot. And even though he was likely to violate the law again and, in fact, did violate the law again, the Supreme Court said that we don't assume people will violate the law and we wouldn't assume that Walter Monaghan would tell his officers that they can continue shackling people wrist to wrist. And for both of those, your argument is this isn't really like O'Shea because it's not going to require individualized determinations with further involvement by the court because, well, you've got to have a hearing under your first claim. And on the second claim, you just can't do it. And if they have a hearing, they have a hearing. That complies. If they continue to shackle, that doesn't. If they quit shackling in that fashion, it does end. That's the argument as to why this is not O'Shea. Yes, Your Honor. OK. We've seen this in a few other cases, too. There's Sam Martano. I'm saying that wrong, I'm sure. But that's a case where they were banning biker vests in the courtroom. A single rule said, no, you can't do that. You have to stop. And that doesn't create an O'Shea problem. I'm sorry, what was that case? Sam Martano versus the First Judicial District Court. That's the Nevada case. That's a 2002 Ninth Circuit case. I wrote that one. OK, I remember it now. And so these are the types of cases where O'Shea doesn't apply, when there can be a discrete rule that doesn't involve a constant checking in or in constant enforcement proceedings. And the district court also said, well, this is going to create this position for the district court as a compliance monitor. And we're going to be checking in all the time.  And I've changed my position, saying that there should be a policy that the administrator of the Alaska court system, who's defendant Johnson, should create a rule that says pre-shackling determinations need to be made. This could happen on the same. And that has to be done by a judicial officer, not by, for example, a marshal service. So when the magistrate signs a warrant, it could have a couple of boxes that say the reason why the person is entitled to a hearing on this question. They would be, whether it's. So they would be entitled to a hearing as to whether they be shackled in a pretrial detention question, where they may issue bond or release them on. Yes, they would be entitled to a hearing. Whether they would be shackled first or not, I just think it has to be a judicial officer who makes that. Do they get shackled when they come before the magistrate on the hearing on whether to be shackled? No, just as with an arrest warrant, where they set bail in the arrest warrant, there's a box to check that bail is necessary and they fill out an amount. Just like that, that happens ex parte without the defendant present. They're brought in, they're arrested. Okay, so I'm trying to figure out what happens here. So a determination as to whether you shackle can be decided ex parte by a judge? Yes, it has to be based on facts, something in the police report, the complaint for arrest. If somebody's just cited and they have a citation to appear in court and they walk in with the attorneys through the back doors of the courtroom, then if the state wants bail, they can ask for bail and that determination would be made then. If they're arrested, that means there was reason to arrest and the magistrate made that decision ex parte ahead of time. They said, well, there's reason to arrest this person. They can't just be cited to come in. They should be arrested and they should be brought in. Are all criminal defendants in Alaska now brought in in shackles? I've seen it that way everywhere now. I understand that there's certain courthouses in very rural areas where they... Where they may not be. They may not be. I think it would be sort of more dependent on risk. And are defendants who are brought in for these hearings, if they're brought in alone, are they always shackled? As far as I know, yes. Again, I haven't been to all these locations. There's a number of locations. Many times, they'll be appearing telephonically from a jail somewhere. So they wouldn't be shackled, although sometimes they're even shackled when they appear on the court TV. It's like a Skype that goes to the pretrial facility and they're shackled in the prison, which I don't understand that either. But yes, it is the most common practice that everybody is shackled, whether in chains together, if they're brought in as one person, that they wear a set of handcuffs. And as far as I know, no judge has ever said that... Upon request, no judge has ever said, OK, you can take this person's shackles off. I'm over time. We'll give you a chance to respond, but let's hear from the other side. Thank you. May it please the Court, my name is Laura Fox and I represent Christine Johnson, the Administrative Director of the Alaska Court System. And counsel for Walt Monaghan in the Department of Public Safety is also here in case any specific questions come up. Otherwise, I'm intending to use the whole time. The District Court correctly abstained under O'Shea to avoid becoming entangled in the administration of Alaska's state court system. Take the second one, the practice of shackling the fellow prisoners. Why is that entangling when the only order is that you can't do that? Boom, you're done. That doesn't sound very entangling to me. If it was an injunction prohibiting the practice, defendants could come back into federal court if they believed the order was being violated. But this is a very simple order. It says don't shackle them this way. They could shackle them other ways, and that doesn't violate the order. The order just says don't shackle the prisoners to each other when they come in the courtroom, yes or no. That's pretty simple to understand, and the defendants can obey it or not obey it, but it's not very complicated. Well, that isn't the only thing that they've asked for. I mean, they've also asked for, well, they've asked for, they've gone back and forth on what they've asked for. They've asked for an injunction about the use of any kinds of restraints and how that's going to be determined by the court system. They've also asked for an order that the Alaska court system adopt a policy about the way that restraints are used in the Alaska court system. So they haven't just asked for that. But I was focusing specifically on this one, which seems to me the strongest case for them. Now, they might or might not be right on the merits, but I'm just questioning about degree of intervention and sort of supervision on the theory of O'Shea. I think if that was all that they were asking for, maybe the case for abstention would be a little bit different. That's not all they've asked for. And I think even under that, there would be, a preliminary injunction would be inappropriate on the record we have here. This is a question so the court could affirm the denial of a preliminary injunction on the grounds that the standard for an injunction wasn't met. Well, the district judge didn't even get to that. I mean, speaking only for myself, if I were to conclude that the district judge made a mistake that O'Shea controlled with respect to this sort of person-to-person shackling, the next question is, well, does that violate the Constitution? The district judge didn't reach that question. I don't think I want to touch it until the district judge had a chance at it. I think the court could, given the situation, I mean, given the high standard for a preliminary injunction, the fact that it's an extraordinary remedy, I think the court could affirm the denial without sending it back to the district court. But the court would at least, I think, have to send it back to the district court to make that determination rather than reversing and declaring that this should be enjoined. But I do think the court could affirm the denial on the grounds that the high standard for a preliminary injunction wasn't met. I think the only question that I see that's cleanly in front of us is whether or not the district judge was to abstain under O'Shea. The court can affirm on alternative grounds or, as I said, at least send it back to the district court to make the determination in the first instance. Remind me if this is correct. I thought that, I think it was after the notice of appeal was filed, that the district court essentially said, listen, if I ever get this back for the reasons I've already given, I'm going to dismiss this outright. Right, the district court. Dismiss the entire action outright. Right, so if you're agreeing, though, with Judge Fletcher that O'Shea abstention would not be a valid basis for dismissing the entire action, it sounds like perhaps we should not merely just affirm the district court, but we should do something else because otherwise, were we to just issue a decision affirming, it sounds like you guys are going to be right back here in a minute. The court asked for, I mean, the plaintiffs, sorry, asked for much more extensive relief that would require much more extensive entanglement than simply just asking for an order to restrain, to enjoin the practice of handcuffing the prisoners together. And I also want to distinguish the type of restraints we're talking about here from the kind that were at issue in Sanchez-Gomez. That case was about five-point restraints where the defendants are, their hands are shackled together and they're shackled to their belly and then they're shackled to their feet. And here we're just talking about handcuffs, either individual defendants in handcuffs or individual defendants handcuffed to each other. And so the plaintiff's relief that they've requested is much more extensive than just an order enjoining one specific practice. Right. That doesn't mean the district court, of course, has to give them everything that they're asking for. But as to the one component of the case that Judge Fletcher has focused your attention on, I guess I'm still waiting to see if you have an O'Shea-based defense of the district court's ruling or are you just saying, no, you're right, we can't rely on O'Shea for that, but I don't know, whatever the but is, that it's on the merits it's not a valid constitutional claim? I mean, on the merits it's not. I mean, certainly the factual circumstances of the different courts throughout Alaska are very different. The needs of the different courtrooms are very different. The layouts of the courtrooms, the security available. And so the need for this practice and the due process balancing of whether this practice is necessary or not is going to be very different from in Sanchez-Gomez, for example. And we have basically no factual record here, and it's an unsettled question of federal law after Sanchez-Gomez was reversed. So I think it's not an appropriate situation for a preliminary injunction, and I think the court could decide that on the current record, that this is not a proper case for a preliminary injunction to have. Okay, but so do you have an O'Shea-based defense of the district court's ruling as to this component of the case that we've just been talking about, or no? I guess that's what I'm trying to figure out. Well, the other cases where abstention's been approved, some of them, so in O'Shea, for example, they were asking for an injunction prohibiting setting bond according to unofficial bond schedule. And you could characterize any of the injunctions in any of these cases as injunctions just saying, don't do X anymore. And nonetheless, the court looked at it and looked at the extent to which it involves itself in the administration of state court systems. We're talking about state court judges hearing criminal cases, trying to keep order in their courtrooms. It's very intimately tied to the function of the state judiciary and the state court system. And so even if an injunction just says, don't do one specific thing, that doesn't mean that it's not causing an entanglement in the administration of the state court system, that it's not an improper involvement in the way the state courts are running their courtrooms. But I think the problem that O'Shea gets at is where a federal court issuing some kind of an injunctive decree would embroil itself in dispute after dispute after dispute because the nature of what was being prohibited would lend itself to fights over whether, in fact, there was compliance with the federal court's decree. I think Judge Fletcher is right, that if all the district court were to order here is that this form of shackling shall never occur under any circumstances, there's no real fight to get embroiled because it will be either a yes or no answer, right? I think that's one part of O'Shea. So certainly this concern about coming back over and over again to federal court is one part of O'Shea, and I think that still would be potentially a concern here because they would come back to federal court if they thought the injunction was not being followed. But O'Shea also talked about the availability of state court remedies. I mean, this is the kind of thing that state courts are willing and able and eager to protect the rights of criminal defendants in state courts. The plaintiffs here haven't even tried to bring this up through the state court channels that are available that were discussed earlier. And so this is a... It's not just about the coming back over and over again to federal court. It's also about this is a central part of the administration of the state court system that state court judges control over their courtrooms and their dockets and their cases and security, and there are state court avenues for this. You say this is a younger abstention issue in that respect, but does younger really extend to this kind of... I mean, this is a pretty discrete part of the state's criminal justice process, right, in a discrete case. Right. Well, I mean, I'm talking about O'Shea abstention, but part of the... I mean, and O'Shea certainly talks about younger, but... Well, the argument you were just making sounded to me much more in younger, younger. It's hard to put that... Well, I mean, they're certainly related. Because there's no exhaustion of state court remedies requirement to get relief on a federal constitutional claim under 1983, right? That's true, but the availability of the state court remedies, as I said, it's something that's discussed in O'Shea. So O'Shea isn't just about whether you're going to continually end up back in federal court. It's also about is federal court the place to resolve this problem? And I think O'Shea and the cases following from it demonstrate that federal court is not the appropriate kind of place to resolve this problem. And plaintiffs haven't tried any of these state court remedies. And as I said, the state courts are willing and able to protect the rights of criminal defendants if there's a problem. And... How do you distinguish the biker case out of Nevada? Excuse me? The biker jacket case out of Nevada that was mentioned. How do you distinguish that case? Well, that case, abstention wasn't raised or discussed at all in that case. Well, but implicitly abstention didn't happen, right? Right. But, I mean, nobody talked about it. So it's hard. You can't read that decision as a decision about abstention when the issue of abstention wasn't even raised. Well, I think you're supposed to assume that abstention was improper in that case because it didn't happen. Well, I mean, I think, again, it's hard to read that as a case about the propriety of abstention when nobody argued for it. But do you find the case indistinguishable then? No. See, I think it is distinguishable. I'd just like to hear you try. Right. I just wanted to mention that aspect. You know, abstention wasn't talked about there. So there's that. I mean, also, the injunction in that case was much less involved than the injunctive relief that the plaintiffs are asking for here. Well, I think what you're missing is that, in that case, the injunction was with respect to people who were no-way defendants. The issue is whether or not people got to come into the courtroom wearing biker jackets. Right. We're talking about... It really is a much more severe intervention into the criminal justice system. Right. We're talking about criminal defendants in courthouses, in courtrooms, and the judges' abilities to control their courtrooms as opposed to... So in short, I think it's distinguishable. You didn't have to run away from it. It's okay. I would agree that it was distinguishable. And I do want to talk a little bit more about the potential for alternative grounds for affirmance. They're basically asking for an order that would require a massive overhaul of the way the Alaska state courts are doing business. I mean, as was discussed, this is done differently in different courts throughout the state. There isn't a sort of blanket policy. It's not done indiscriminately. Defendants aren't always restrained. It sort of depends on the security situation of the different courthouses. And, I mean, for instance, in the pretrial facility, there's one officer and 15 defendants, and they're restrained because otherwise this would be a risk of a riot. And so they're basically asking for this massive overhaul of state court procedures on the basis of unsettled federal law. So there's no Sanchez-Gomez. We don't know what the situation is with the status of the federal law. And there's no factual record, essentially, to back up the need for a preliminary injunction here. And a preliminary injunction is an extraordinary remedy. And the balance of the equities and the public interest don't come out in favor of such drastic relief based on basically a guess about how the federal law is going to come out in this area. And they don't just have to show that there's a likelihood of success on the merits. They have to show that the law and the facts clearly favor them because they're asking for a mandatory injunction, at least depending on which characterization of the relief you look at. I mean, they're asking for the state courts to adopt a policy when there currently isn't a policy. So they're not asking to preserve the status quo. And as far as their likelihood of success on the merits, Sanchez-Gomez is distinguishable and it's no longer good law. So it's distinguishable because Alaska state courts aren't using the same kind of restraints that were at issue in that case. Also, many other factual circumstances distinguish Alaska state courts from the federal courts at issue in Sanchez-Gomez. And this court has a supervisory role over federal district courts that it doesn't have over Alaska state's courts, which sort of calls back the abstention discussion. And without Sanchez-Gomez, we're just left with the need to balance the plaintiff's interest against the government's interest, both for purposes of the due process inquiry on the merits and for purposes of the preliminary injunction inquiry. And that balance just doesn't come out in favor of granting the drastic relief of a hasty preliminary injunction on a limited record. Injunction would compromise public safety, pull police officers off the street that would otherwise be protecting the public in these remote communities. It would diminish the interests of criminal defendants themselves because it would introduce delay into the hearing of their cases if defendants can't be brought in together and have to instead wait in holding cells, restrained for their cases to be individually called. That would compromise the criminal defendant's own interests. So the balance of the equities doesn't favor this drastic remedy. There's state court remedies available. And as I mentioned, if the court doesn't agree with abstention and doesn't affirm on the preliminary injunction standard, the court should send it back for the district court to do the balancing and the preliminary injunction inquiry in the first instance rather than simply ordering the entry of a preliminary injunction. Okay. Thank you. Thank you. Ms. Morris, would you put two minutes on the clock? Thank you, Your Honor. Real quickly, I want to mention that in the complaint, it was alleged that two named plaintiffs who aren't here today, but they did request that their shackles be removed. And in one case, the answer was no. In the other case, it was deferred to judicial services, and the answer was no. Both of these defendants had to do it on their own. Their lawyer wasn't willing to do it for them. The affidavit of Olivia Mackin explains why. This was all before the district court, that there isn't a willingness on the part of the Alaska Bar to bring these claims to the Supreme Court. And how do we know this? We know because they haven't. Nobody else has brought it. They're not there. Why? I don't know. There would be a way to do that, I think, except it would end up a lot like Sanchez Gomez ended up with the United States Supreme Court, that by the time it got there, it would be moot. And there is no exhaustion requirement. That's not a constitutional requirement. Also, I want to mention the type of restraints used. They make it sound like somehow being handcuffed to other people is nicer than having a five-point restraint. Well, I disagree. Persons under five-point restraints, they have their own autonomy. They can move about by themselves if they have an itch. They can take care of that on their own. They don't need somebody's help to do it with them. When you're handcuffed together in a chain, also no defense attorney can come and sit next to you. It's painful when someone else moves. There's a pain. It might not be severe, but it's not comfortable. Also, as far as what this Court can do in deciding this case, I think it's Klein versus the city of San Clemente. That's a 2009 9th Circuit case. This case can be remanded with instructions to order the injunction. Can I ask you one quick question about standing? The organization that you represent, well, first of all, I think there were two members who submitted declarations back in January. Are they still in pretrial detention? No. So does the organization have members who are currently in pretrial detention? Yes, many. Okay. And you have not supplied any additional declarations at this point, but you're saying that you could? I would submit that they should not. Under the First Amendment, they're protected. But if I have to, I can. We have copies of them. Copies of? No, no, no. I'm saying – Oh, a further – oh, I'm sorry. So this organization is continually being replenished with people who are in pretrial detention? Yes. Is that the idea? They're not writing declarations. They're signing a membership log, roles. I see. Once they're admitted. Right. Five members, and one of whom I believe is still pretrial, did sign declarations. And we could obtain more if necessary. Got it. Okay. Thank you. Okay. Thank you. Thank both sides for their argument. Interesting case. Thank you. Alaska pretrial detainees versus Johnson and Monaghan submitted for decision, and that completes our argument for this morning.
judges: W. Fletcher, Bybee, Watford